The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 1 December 1995, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. A set of plaintiff's medical records consisting of seventy-four pages, marked as Stipulated Exhibit Number Two, is admitted into evidence.
4. An Industrial Commission Form 22, Wage Chart, submitted by defendants' counsel pursuant to the order of 3 February 1997, is admitted into evidence.
 EVIDENTIARY RULINGS
The objection appearing in the deposition of Dr. Getz is OVERRULED.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-five years old. He was employed by defendant-employer for three years. Defendant-employer was a residential building contractor. Plaintiff was employed by defendant-employer as a carpenter and crew foreman. Plaintiff's work involved numerous carpentry duties, including framing and trim carpentry. In addition to his construction duties, plaintiff supervised a construction crew and read construction blueprints. During a usual work day, plaintiff moved and carried construction materials, including lumber and concrete siding.
2. On 6 November 1995, plaintiff and his co-workers were moving concrete siding on one of defendant-employer's construction sites. While "pushing up" siding, plaintiff experienced left shoulder pain. There is no evidence of record that "pushing up" siding was not a usual part of plaintiff's normal work routine or that anything unusual or unexpected occurred when he was "pushing up" siding on that date. Plaintiff reported this incident to defendant-employer.
3. The day after this incident, plaintiff presented to Dr. Hiltz. Plaintiff reported to Dr. Hiltz that he had been experiencing intermittent left shoulder pain for seven months and that his shoulder pain had increased in severity over the previous few days. Dr. Hiltz prescribed medications. Thereafter, plaintiff returned to work for defendant-employer in his usual capacity.
4. On Friday, 1 December 1995, plaintiff worked on a construction site where there had been delivered a load of lumber. The lumber had been left on the driveway of the construction site. Plaintiff's usual practice was to straighten or clean construction sites prior to the weekend. On 1 December 1995, plaintiff was in a hurry because he wanted to leave work for the day by 3:30 p.m. Plaintiff and at least one other employee undertook to move the lumber off of the driveway to clear an entry way onto the site. Plaintiff lifted two large pieces of lumber onto his shoulder to carry them a distance of twenty feet. When he lifted the lumber, he felt his shoulder "pop". There is no evidence that anything unusual or unexpected occurred when plaintiff lifted the lumber.
5. On 2 December 1995, plaintiff presented to the New Hanover Regional Medical Center. He reported that he had a gradual onset of left shoulder pain beginning one to two months earlier. He also reported that his shoulder had improved but that he developed more intense shoulder pain the previous day. Plaintiff was prescribed medications and his arm was placed in a sling.
6. On 3 December 1995, plaintiff telephoned his supervisor, Mr. Robbins, and reported that he had sustained an injury on 1 December 1995. Mr. Robbins, who was also the owner of defendant-employer, asked plaintiff to report to work on 4 December 1995. For approximately two months prior to December 1995, plaintiff occasionally reported to Mr. Robbins that he was experiencing shoulder pain.
7. On 4 December 1995, Mr. Robbins and plaintiff met and discussed plaintiff's work status. Plaintiff informed Mr. Robbins that he would be unable to work for six to seven weeks. Mr. Robbins, who's business was growing and in need of experienced employees, offered plaintiff employment at his usual rate of pay, running defendant-employer's construction crews and reading blueprints. Mr. Robbins offered to allow plaintiff to work in this position without performing any manual labor.
8. Plaintiff's shoulder condition was evaluated by Dr. Azzato on 11 December 1995. Dr. Azzato prescribed medication and recommended physical therapy. He released plaintiff to return to work on 18 December 1995. On 20 December 1995, plaintiff came under the care of Dr. Getz. On that date, plaintiff had a bump on top of his left shoulder and he experienced a popping sensation with shoulder movement. The bump on plaintiff's shoulder could have been caused by trauma or arthritis. Plaintiff's left shoulder pain was caused by arthritis which was aggravated by an injury. Plaintiff's arthritis pre-existed the incidents on 7 November 1995 and 1 December 1995.
9. Dr. Getz restricted plaintiff from performing work which involved using his arm above shoulder height. On 21 May 1996, Dr. Getz performed surgery on plaintiff's left shoulder.
10. The position defendant-employer offered on 4 December 1995 was consistent with the physical restrictions imposed by Dr. Getz. Plaintiff knew how to read construction blueprints, however, refused defendant-employer's offer of employment.
11. Plaintiff's aggravation of his arthritis on 1 December 1995 was not the result of an interruption of his usual work routine by unlooked for or unexpected circumstances. Rather, plaintiff aggravated his arthritis while performing his usual duties in his customary manner.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. On 4 December 1995, plaintiff unreasonably refused employment, suitable to his physical capacity which was procured for him by defendants. N.C. Gen. Stat. § 97-32.
3. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This the ___ day of March 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DCS:bjp